UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
HUMPHREY O. UDDOH, and PLAMEN                               :
KOEV,                                                       :  **MEMORANDUM DECISION AND**
                                                            :  **ORDER**
                        Plaintiffs,                         :
                                                            :  16-cv-1002 (BMC) (LB)
              - against -                                   :
                                                            :
UNITED HEALTHCARE, GINGER                                   :
WHISPELL, and JENNIFER JABLONSKI,                           :
                                                            :
                        Defendants.                         :
                                                            :
----------------------------------------------------------- X

**COGAN, District Judge.**

Plaintiffs *pro se* are a same sex, male couple who applied for insurance benefits through their insurance plan in connection with their desire to parent a child using in vitro fertilization ("IVF") and with the help of a third-party surrogate. After initially issuing a conditional pre-approval of coverage for female harvesting and implantation procedures as to one of the insureds, the policy administrator reversed its position and denied coverage on the ground that it had mistakenly assumed that plaintiff Plamen Koev was a woman, and since Plamen turned out to be a man, harvesting and implantation procedures were not possible. Nor did the policy cover third-party surrogacy, whether for heterosexual or homosexual insureds. After further consideration, the policy administrator modified its position and agreed to pay for medical procedures necessary for the collection of sperm from both plaintiffs, but not for the collection or implantation of oocytes or surrogacy procedures.

Claiming that the change of position has caused them damages, plaintiffs' amended complaint alleges five "causes of action" styled as follows: (1) "Breach of Contract"; (2) "Discriminatin [sic] and Overbreadth"; (3) "Promissory Estoppel"; (4) a second cause of action

for "Discrimination"; and (5) "Misrepresentation." Defendants consist of the plan administrator for plaintiffs' insurance plan, United Healthcare ("United"), and two United claims administrators, Ginger W. Whispell and Jennifer Jablonski (together with United, the "United Defendants").

This is plaintiffs' second effort to state a claim. I dismissed the initial complaint, which had also alleged claims against plaintiffs' insurance plan, "the Empire Plan," finding that the Empire Plan was not a suable entity and that plaintiffs had failed to state a claim against the United Defendants. I granted plaintiffs leave to bring an amended complaint against the United Defendants. The United Defendants have moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6), and for the reasons set forth below, their motion is granted.

## BACKGROUND

Plaintiff Humphrey O. Uddoh is an attorney for the New York City Transit Authority. His employer provides health insurance through the New York State Health Insurance Program, which offers a plan known as the Empire Plan, under which he has been covered for almost a decade. He added his male partner, plaintiff Plamen Koev, as an additional insured at the same time he signed up. The application to add Koev disclosed that he was male. United acts as the policy and/or claims administrator for Empire, and defendants Jablonski and Whispell are employed by United.

Plaintiffs decided to start a family in early 2014. Plaintiff Uddoh applied for pre-approval of certain IVF procedures which, in part, had to do with the fact that both of them had conditions requiring some fairly serious surgery in order to collect the sperm necessary for IVF. On May 16, 2014, he received a letter from United "confirming that the following qualified

2

procedures for you and Plamen Koev are a covered expense under your health benefit plan: IVF, GIFT, ZIF, ICSI, Assisted Hatching, MESA, TESE, sperm, egg or inseminated egg procurement, processing, egg or embryo banking determined appropriate by your physician."[1] The letter also stated: "Please note that payment is subject to patient eligibility and Empire Plan provisions at the time the health care services are received."

Shortly thereafter, defendant Whispell called one of Koev's medical care providers to inquire whether he was male or female. After finding out that Koev was a male, Whispell allegedly told the provider to immediately cancel the procedure.

After learning about the exchange, Uddoh contacted defendant Jablonski. At that point, Jablonski accused Uddoh of insurance fraud, and threatened to seek recoupment of the surgical costs that it had already paid for Uddoh's two surgical procedures. In addition, the complaint alleges that Jablonski and Whispell made similar accusations of fraud to the health care provider.

On November 4, 2014, United sent a letter to Koev disclaiming coverage for his portion of "infertility services." The letter stated that

> We have completed a request for infertility services for you. Your condition is not consistent with the Plan benefit for infertility services. You do not qualify for the benefit because your condition is not the reason a pregnancy cannot be achieved. In addition the plan does not provide benefits in connection with services for surrogacy.
>
> Under the terms of the Empire Plan, "For the purposes of this benefit, infertility is defined as a condition of an individual who is unable to achieve a pregnancy because the individual and/or partner has been diagnosed as infertile by a physician." In addition, "Medical expenses or any other charges in connection with surrogacy" are excluded from coverage under the Plan. Accordingly any charges or expenses for services related to your infertility or in connection with surrogacy are not covered.

---

[1] These are all conception techniques and procedures related to assisting conception outside of the womb and/or implantation of zygote inside the womb or a fallopian tube.

After these communications, Uddoh demonstrated to United that Koev had always been identified as a male both in the policy application and in claims that he had previously submitted. United thereupon agreed to modify its rejection letter. It agreed to cover the surgical procedures for the harvesting of the sperm from both partners, their storage, and fertilization. However, it did not agree to "procurement of oocytes" or "services rendered to a surrogate." The basis for this denial was that the Empire Plan expressly excludes "[m]edical expenses or any other charges in connection with surrogacy"; "[a]ny donor compensation or fees charged in facilitating a pregnancy"; and "[a]ny charges for services provided to a donor in facilitating a pregnancy."

The complaint alleges that in reliance on the initial pre-procedure approval letter, plaintiffs spent $150,000 which is not covered under the revised approval letter. Plaintiffs seek that amount in compensatory damages, plus "$1,000,000 in punitive damages, and $3,000,000 in treble damages."

## DISCUSSION

### I. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. To determine if dismissal for failure to state a claim is appropriate, the Court must "accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237

4

(2d Cir. 2007). When considering a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." Id. (internal quotation marks omitted). Although the Court must "take all of the factual allegations in the complaint as true" for the purpose of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

In considering whether to dismiss a complaint under Rule 12(b)(6), the Court is "generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002). The Court may also consider documents that, although not attached to the complaint as exhibits or incorporated by reference, are "integral" to the pleading. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

Ordinarily, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). Such pleadings are "to be liberally construed," Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). In the instant case, however, the special solicitude to which a *pro se* plaintiff is normally entitled is tempered by the fact that plaintiff Uddoh is an attorney. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 86 n.4 (2d Cir. 2001) ("We note, however, that *pro se* attorneys such as [the plaintiff] typically 'cannot claim the special consideration which the courts customarily grant to pro se parties.'") (quoting Harbulak v. County of Suffolk, 654 F.2d 194, 198 (2d Cir. 1981)). In addition, although plaintiff Koev is

5

technically appearing *pro se*, plaintiffs' submissions, in which plaintiff Uddoh references himself in the first person and the two of them in the third person plural, compel the conclusion that Koev has *de facto* representation through Uddoh. The Second Circuit has suggested that these circumstances may be taken into account in determining how much leeway to afford plaintiffs. See Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he appropriate degree of special solicitude is not identical with regard to all *pro se* litigants.").

Although plaintiffs have included enough factual detail so that the circumstances giving rise to their claims are understandable, they are quite vague as to whether and how the various legal theories they have asserted give rise to liability. I am inclined to allow some deference to plaintiffs because, even though plaintiff Uddoh is an attorney and plaintiff Koev is virtually being represented by him, plaintiffs' submissions are similar in form and comprehensibility to those typically received from *pro se* litigants. Even with that indulgence, however, plaintiffs have failed to present any plausible legal theories.

## II. Breach of Contract

Plaintiffs' breach of contract claim is not based on the provisions of the Empire Plan. Rather, in opposing defendants' motion to dismiss, plaintiffs argue that the May 16, 2014 pre-approval letter constituted "an integrated contract" through which United approved surrogacy services for plaintiffs' third-party surrogate. Plaintiffs also erroneously contend that the Court may not even consider the provisions of the Empire Plan. See Sira, 80 F.3d at 67.

Plaintiffs' theory of what happened here is entirely implausible. All of the circumstances alleged in plaintiffs' amended complaint point to a simple mistake of fact – that United erroneously believed that plaintiff Koev was a woman, and therefore approved female fertility procedures for him, then withdrew its approval upon discovery of its error because it is

6

biologically impossible for a male to undergo such procedures. Indeed, plaintiffs' amended complaint acknowledged that this is a case of mistaken approval based on United's misperception of Koev's gender – not a knowing agreement to provide benefits otherwise unavailable under the Empire Plan. Specifically, the amended complaint refers to United's pre-approval letter "as a blunder that was clearly and admittedly defendant United Healthcare's own, unilateral mistake." That is exactly what it was.

Plaintiffs changed their theory of the case in response to defendants' motion to dismiss, raising new allegations that United knew that both plaintiffs were male and knowingly agreed to provide surrogacy procedures for plaintiffs' third-party surrogate. A plaintiff, however, is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss, let alone new allegations that contradict the allegations in their pleading. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (complaint cannot be amended to add new factual allegations in opposition to motion to dismiss); Rogers v. Hines, No. 16-cv-457, 2016 WL 7378988, at *4 (D. Conn. 2016) ("As this distinction was not included in the amended complaint and the plaintiff cannot amend his complaint through a memorandum, the defendants' motion to dismiss is granted . . . ."); Tyus v. Newton, 13-cv-1486, 2015 WL 1471643, at *5 (D. Conn. 2015) ("The plaintiff may not . . . amend the amended complaint in a memorandum in opposition to a motion to dismiss"); K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss."); cf. Southwick Clothing LLC v. GFT (USA) Corp., 99-cv-10452, 2004 WL 2914093, at *6 (S.D.N.Y. 2004) ("Plaintiffs cannot survive a summary judgment motion by contradicting their own pleadings in an effort to raise a genuine issue of fact.").

7

Even if plaintiffs were permitted to change the allegations in their amended complaint, they cannot walk away from the other facts that they have alleged. The reason they referred to United's pre-approval letter as a "blunder," rather than an intentional consent to cover surrogacy services, was that based upon all of the facts they allege and the documents upon which they expressly rely, the characterization as a blunder is so obviously correct.

First, whatever plaintiffs mean by referring to the May 16, 2014 letter as an "integrated" contract, the letter contained an express proviso deferring to the terms of the Empire Plan – that any coverage was "subject to patient eligibility and Empire Plan provisions at the time the health care services are received." Plaintiffs cannot rely on the pre-approval letter while simultaneously excising the proviso. In fact, the proviso is dispositive because it is undisputed that the Empire Plan expressly excludes coverage for surrogacy services. Plaintiffs cannot plausibly contend that United was deliberately approving coverage for surrogacy services and then incorporating into its approval terms of insurance that prohibited such coverage. That is not only implausible, but it makes no sense at all.

Second, the May 16, 2014 letter nowhere mentions providing surrogacy services. To the contrary, it authorizes coverage for fertility enhancement procedures for "you [Uddoh] and Plamen Koev." The only reasonable reading of the letter, both standing alone and especially in conjunction with the terms of the Empire Plan, is that United was approving the harvesting of ovum from Plamen Koev and/or the implantation of a fertilized zygote into Plamen Koev's womb – either of which was impossible since Plamen Koev is a male. If United was going to deliberately approve coverage for surrogacy services in contravention of the Empire Plan (although even to state the premise shows its implausibility), the least United would have done was to have referenced such services.

Third, plaintiffs' description of United's conduct once it discovered its error is only consistent with the pre-approval letter having been a mistake. United's surprise, its employees' accusations of plaintiffs' fraudulently attempting to obtain coverage for excluded surrogacy services, and the ultimate resolution to cover procedures for the male fertility issues that each plaintiff had, but not third-party surrogacy procedures, are only consistent with United having made a mistake in issuing the May 16, 2014 letter on the assumption that plaintiff Koev was a woman.

All of these circumstances are described in plaintiffs' amended complaint and thus may be considered in determining plausibility. The only potentially contrasting circumstances which plaintiffs allege to show deliberation on United's part is that some of plaintiff Koev's prior claims over the years demonstrated that he was a male.[2] But it is perfectly plausible that United issued the pre-approval letter without checking into or appreciating the nature of plaintiff Koev's prior claims; it is wholly implausible, for the reasons set forth above, that knowing that plaintiff Koev is a male, United nevertheless decided for no reason at all to provide coverage for excluded surrogacy services. Plausibility consists of "more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts "that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

Once we conclude that United simply made a mistake, plaintiffs' claim disintegrates. The core inquiry in contract formation is the parties' intent, see Klos v. Lotnicze, 133 F.3d 164,

---

[2] Even though plaintiff Uddoh is an attorney, plaintiffs submitted a bundle of plaintiff Koev's medical records *ex parte*, apparently to demonstrate that United was on notice that plaintiff Koev is a male. Defendants understandably protest the unauthorized submission, both because it was *ex parte*, and thus defendants have not had a chance to review these documents, and also because, as I have advised plaintiffs previously, extraneous documents cannot be considered on a Rule 12(b)(6) motion. In any event, the submission is immaterial; I am assuming that had United carefully checked its records to determine plaintiff Koev's gender (although I see no reason to charge United with the task of anti-surrogacy policing), it would have found that plaintiff Koev is a male. That is what makes the pre-approval letter a blunder, as the amended complaint alleges.

168 (2d Cir. 1997), and nothing in the language of the pre-approval letter indicates an intent to cover surrogacy. Moreover, if plaintiffs were going to obtain a benefit not provided to anyone else under the Empire Plan, as plaintiffs claim they did, then plaintiffs would have had to pay for it. Consideration is an equally fundamental requirement in contract formation, see Greenberg v. Greenberg, 646 F. App'x 31, 32 (2d Cir. 2016); Murray v. Northrop Grumman Info. Tech., Inc., 444 F.3d 169, 178 (2d Cir. 2006), and nowhere do plaintiffs' allegations speak to it. They paid the same premium as every other couple, homosexual or heterosexual, and none of them received coverage for third-party surrogacy services.

All that happened here is that United made a mistake as to plaintiff Koev's gender, and plaintiffs are trying to get a windfall out of it. That effort does not constitute a plausible claim for breach of contract.[3]

## III.    Promissory Estoppel

It is an essential element of a claim for promissory estoppel that the plaintiff reasonably rely on a defendant's clear and definitive promise. See Bocksel v. DG3 N. Am., Inc., No. 14-CV-6015, 2016 WL 873138, at *10 (E.D.N.Y. Feb. 12, 2016). Plaintiffs cannot satisfy this element, at least, of their promissory estoppel claim for two reasons. First, to read the pre-approval letter to include coverage for third-party surrogacy services would be patently unreasonable for the reasons discussed above. Second, attached to plaintiffs' amended complaint, and therefore appropriate for consideration on this motion to dismiss, are invoices, legal and health care provider bills, and other documents showing the monetary damages that plaintiffs purport to have sustained in reliance on the preapproval letter. Each bill is dated after

---

[3] With regard to plaintiffs' breach of contract claim and promissory estoppel claim, Whispell and Jablonski have to be dismissed in any event. The amended complaint expressly alleges that they were acting as employees of United, and nowhere alleges that they were taking on, or plaintiffs understood them to be taking on, personal liability for any obligations of United.

10

United realized its error and issued its November 17, 2014 letter. Plaintiffs had no right to rely on their misconstruction of the pre-approval letter once it had been revoked.

Once again, plaintiffs' opportunism in attempting to capitalize on defendants' mistake does not give rise to a claim for promissory estoppel.

**IV.     Discrimination**

Although it appears in two separate counts of plaintiffs' amended complaint, plaintiffs' claim of discrimination may be the vaguest in the amended complaint, which is itself vague. I assume the claim has something to do with the fact that plaintiffs are a same-sex male couple, although I do not know for sure as nowhere in the amended complaint have they alleged that they are members of a protected class or the basis on which they were discriminated against.

Even assuming that plaintiffs' complaint is based upon their status as a homosexual couple, it fails. First, there is no dispute that neither homosexual nor heterosexual couples can obtain reimbursement for third-party surrogacy services under the Empire Plan. All couples are treated the same. There is thus no discrimination against plaintiffs based on their sexual preference.

More fundamentally, there is nothing illegal under New York law about discriminating between people as an abstract matter. The New York legislature has prohibited discrimination based on various protected categories in specified circumstances, including sexual preference, see N.Y. Exec. L. § 291 (prohibiting employment discrimination based on sexual orientation); N.Y.C. Admin. Code. § 8-602 (injunction available to prevent interference with legal rights of protected groups, including sexual orientation), but if the legislature has not addressed protection for a specific class of persons, it is not up to me to implement what other categories and situations I personally might think require legal protection. If plaintiffs are going to claim

11

discrimination based on their sexual preference or orientation (again, I do not see a plausible claim because they were treated the same as a heterosexual couple), they need to rely on a statute that affords them such protection.

The only statutes which plaintiffs cite are New York Insurance Law § 2606 and 2607. Once again, I will put aside the fact that even though plaintiff Uddoh is an attorney, these statutes are nowhere referenced in the amended complaint, and thus cannot be invoked for the first time in opposition to this motion to dismiss. See supra, at II. But even if they could, the statutes are inapposite by their terms. Section 2606 prohibits a regulated insurance company (which I will assume includes United) from discrimination based on "race, color, creed, national origin, or disability." Section 2607 prohibits discrimination based on "sex or marital status," and no New York case has held that this includes sexual preference. An expansive reading of the prohibition against discrimination based on "sex" as including sexual orientation discrimination, however, has been rejected by the Second Circuit with regard to employment rights under Title VII. Compare Simonton v. Runyon, 232 F.3d 33 (2d Cir. 2000) (Title VII's prohibition against harassment based on sex does not encompass harassment based on sexual orientation) with Christansen v. Omnicom Group, Inc., 852 F.3d 195 (2d Cir. 2017) (gender stereotyping discrimination is actionable under Title VII).

Before we get any further afield, let us return to the point that the ongoing debate about whether anti-discrimination statutes prohibiting sex discrimination include gender stereotyping in the workplace has nothing to do with this case. I reference it merely to show how far removed from the situation presented here are the only New York statutes cited by plaintiffs. If United had knowingly approved third-party surrogacy coverage for heterosexual couples and not homosexual couples, plaintiffs still would not have a claim because the law does not cover that

12

discrimination. And if § 2607 covered sexual orientation, it is undisputed that homosexual couples and heterosexual couples are treated the same under the Empire Plan. Thus, plaintiffs cannot satisfy either step that would be necessary for an illegal discrimination claim.

V.      **Misrepresentation**

It is, once again, difficult to decipher what plaintiffs mean by this claim. The facts upon which it is based are identical to plaintiffs' claim for slander in their original complaint, which I dismissed as barred by the statute of limitations. All that plaintiffs have done is change the label of their claim, but it fares no better as a misrepresentation claim that it did as a slander claim.

First, interpreting the claim as "negligent misrepresentation," because that is its closest common law analogue even though plaintiffs do not use that term, it is fundamental that the misrepresentation must be made to the plaintiff, who then reasonably relies on it. See Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 114 (2d Cir. 2012). The "misrepresentation" label thus presents an effort by plaintiffs to fit a square peg into a round hole, because what plaintiffs appear to be complaining about are United's statements (previously alleged to be slanderous) to third parties. Nobody is alleged to have relied on those, reasonably or otherwise.

Second, even if plaintiffs are contending that the pre-approval letter was a negligent misrepresentation, the claim fails for the same reasons set forth above in connection with plaintiffs' promissory estoppel claim – any purported reliance on the pre-approval letter as authorizing coverage for surrogacy services would have been unreasonable, and the invoices and other documents annexed to the amended complaint show that they did not, in fact, rely on it.

Third, to maintain a claim for negligent misrepresentation, plaintiffs must allege a special relationship with the speaker, and generally, the relationship between an insured and the insurer does not amount to a special relationship. See generally Kraatz. V. USAA Casualty Insurance

13

Co., No. 16-CV-103, 2017 WL 876187, at *7-8 (W.D.N.Y. March 6, 2017) (finding no special relationship between the plaintiff-insured and the defendant-insurance company necessary for a negligent misrepresentation claim); Freeman v. MBL Life Assurance Corp., 60 F. Supp. 2d 259, 266 (S.D.N.Y.1999) ("Under New York law the relationship between an insurance company and a policyholder is a contractual relationship, not a fiduciary one."); Murphy v. Kuhn, 90 N.Y.2d 266, 270-71, 660 N.Y.S.2d 371 (1997) (noting that no New York court has held that an insurance agent has a continuing duty to advise the insured); Batas v. Prudential Ins. Co. of Am., 281 A.D.2d 260, 264, 724 N.Y.S.2d 3 (1st Dep't 2001) ("No special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer; the relationship is legal rather than equitable . . . ."). Indeed, United brought no special expertise to this issue; all that plaintiffs had to do was read the Empire Plan's policy and they would have seen that third-party surrogacy coverage was excluded.

Finally, I note that plaintiffs offered no response in defense of this claim in their opposition to defendants' motion to dismiss. See Reid v. Ingerman Smith LLP, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."); Sullivan v. City of New York, 14-CV-1334, 2015 WL 5025296, at *4-5 (S.D.N.Y. Aug. 25, 2015) (holding that plaintiff, an attorney proceeding *pro se*, abandoned his claims against certain defendants where he failed to respond to those defendants' motion to dismiss but continued to pursue the claims as to other defendants). Here, plaintiffs may well have decided that there simply was no way to avoid dismissal of their "misrepresentation" claim but in any event, they are thus deemed to have abandoned it.

## VI. Leave to Amend

Although plaintiffs have not requested it, I have considered *sua sponte* whether to afford plaintiffs leave to file a second amended complaint in light of plaintiffs' *pro se* status. My conclusion is that leave to amend would be futile. First, plaintiffs were already granted leave to amend. Second, it is not as if the amended complaint failed because of a dearth of factual allegations – the whole story is there, but it simply does not amount to an actionable claim. Finally, as discussed above, plaintiffs have already introduced legal theories that were not articulated in the amended complaint, and although I have noted that their belated advocacy would itself constitute sufficient reason to reject those theories, I have also found that the theories fail as a matter of law. Further leave to amend is therefore not warranted.

## CONCLUSION

Defendants' motion to dismiss is granted. The Clerk is directed to enter judgment in favor of defendants, dismissing the amended complaint.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
May 22, 2017